1. All engaged in the commission of a misdemeanor are principals, and if the defendant worked for Forrest Davis and Howard Tarvin at their place of business, and this was where his duties were to be performed, he might be guilty of having and controlling intoxicating liquor though he was not the owner of the liquor but merely the employee and agent of the owners.
2. Proof either that the defendant directly or personally enacted the criminal transaction (possessing more than one quart of tax-paid liquor in a dry county), or that he aided or abetted the criminal transaction of his employers at the employers' place of business, would authorize the defendant's conviction of "violating the State revenue tax act to regulate and control alcoholic liquors and beverages." Toles v. State, 10 Ga. App. 444 (73 S.E. 597); Black v. State, 54 Ga. App. 326
(187 S.E. 884); Lewis v. State, 57 Ga. App. 162
(194 S.E. 831).
 DECIDED OCTOBER 9, 1942.
The defendant was convicted of possessing more than one quart of tax-paid liquor in a dry county. The exceptions are on the general grounds only. *Page 119 
Certain officers were riding in an automobile on Second Avenue in the City of Rome, Georgia, and saw the defendant, some fifteen or twenty steps from the road, stoop down and pick up something in his left hand which looked like a pint bottle of whisky. They were engaged in an investigation with reference to a stolen automobile with which the defendant was not connected. But five or ten minutes later they came back and went to the place where the defendant had been seen to stoop down, and found certain cases of whisky, 35 pints and 18 half pints, all of which were stamped. The place where the whisky was found was a vacant lot near and adjoining the lot upon which an eating place was run by Davis and Tarvin, who had the general reputation of handling whisky.
Payne, one of the officers, testified in part as follows: "I am Mr. Ben O. Payne, deputy sheriff of Floyd County. On or about the 4th of January this year I did go by or pass the place where Mr. Evans was working, with Mr. Brannon. Well, I saw Mr. Evans walk up to a spot just beyond the building and Second Avenue, and reach down and get a bottle. He got it out of a case there. I could see over the stuff around there and I could see that he reached down and got it out of a case. He got the bottle and about the time he raised up with it, he had it in his left hand, he looked towards our car and turned and went back the path there to the building with it in his left hand, holding it back in his hand like this [indicating]. It looked like a pint bottle of whisky, at least it looked like the same stuff that we found there in the cases. I later went back there and found some partly filled cases of pints that I saw him reach in, and also another case that had 18 half pints in it and all different kinds of brands. Evans does work there at that place. All of that happened in Floyd County. . . Between the road and back where we later went there and found the liquor, at the edge of the lot, there are some scrubby trees. This whole area is overgrown, is all briars and Johnson grass. They would vary in height from four feet down to two and a half feet when it was standing up, but since it has been tramped down it would not. As to knowing that it had not been tramped down at that time, in the middle of it, it was. I don't mean to say that this liquor was lying out there so I could ride up there in our automobile *Page 120 
and see the cases of liquor. As to how I know it was liquor that he reached down and picked up, well, I would not swear that it was whisky that he picked up, but we went there later and found the whisky right where he picked it up. From the automobile I saw what I taken to be the tops off pasteboard cartons, turned back at the left-hand side of the carton where he got the bottle, and I could see because I was sitting in the automobile, but I don't think I could have seen it if I was not in the automobile and was on the ground. . . As to saying that this man was working over there at this place of business that Sunday, as well as I could say he was. I did not see him doing any work, nothing except to get that whisky. I saw him go in the place and I saw him come out, and I said, `Jewett, you will have to take a little ride,' and he said, `I knew you were coming after me.' Now, as knowing that he asked me what we wanted with him and if I said, `You know what I want with you,' I believe after we started he asked what we wanted with him and I guess I might have made that remark that he knew what we wanted. This place of business I speak of is operated by Forrest Davis and Howard Tarvin according to my information. I have been there before and I have seen them all there. There is a fence that comes up in front of the building coming from towards the road, but back this way there is no fence [indicating]. The front of this place is fixed for parking. The place where I found the liquor out there is not such a place that you could drive an automobile in it; it is certainly not a part of the place where you park the automobiles there; no, sir, it is not used. And as to it being over on the other side of the line that they have there, I don't know about that, it is beyond the space that is cleared up there. I am familiar with their character for handling liquor and they do have that reputation. . . The trial there from the place of business went directly to the whisky and was frequently traveled, and it was muddy that day and you could tell that it had been traveled. That particular trial stopped at the liquor."
The evidence authorized the jury to find that the defendant was working for Forrest Davis and Howard Tarvin at their place of business (lunch room), and that they had characters *Page 121 
for handling intoxicating liquors. Even if we could concede that the defendant had no interest in the 35 pints and 18 half pints of whisky, yet we think the jury were authorized to find that the defendant not only knew the whisky was there, but that he aided his employers in keeping it or having it on hand; for proof that the defendant either personally or directly enacted the criminal transaction (possessing more than one quart of tax-paid liquor in a dry county), or that he aided or abetted the criminal transaction at his employers' place of business, did authorize the defendant's conviction of possessing more than one quart of liquor in a dry county. The judge did not err in overruling the motion for new trial.
Judgment affirmed. Broyles, C. J., and Gardner, J., concur.